IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

AUDRA GUNN                                                              PLAINTIFF

v.                          Case No.  3:10-cv-35-DPM

SHERIFF DAN LANGSTON, in his
official and individual capacities;
and GREENE COUNTY                                           DEFENDANTS

ORDER

Audra Gunn (now Eubanks after marriage) has sued her former
employer under Title VII, § 1983, and the Arkansas Civil Rights Act.  Gunn
alleges that she was sexually harassed by a fellow employee of the Greene
County Sheriff's Office and then fired for complaining about the harassment.
Gunn also says that Sheriff Langston discriminated against her because she
is a woman.  The Defendants deny the allegations and move for summary
judgment. Most of the material facts are undisputed. The Court construes the
disputed ones as Gunn asserts.  And it views all the proof in the light most
favorable to Gunn.  *Taylor v. White*, 321 F.3d 710, 715 (8th Cir. 2003).

1. **One Preliminary Point.** The official-capacity claim against Sheriff Langston is a legal redundancy because Greene County is also a party, *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985). So the Court dismisses that claim with prejudice. *Liebe v. Norton*, 157 F.3d 574, 578 (8th Cir. 1998). The Court has already dismissed the Greene County Sheriff's Office as a party. *Document No. 11.* The individual-capacity claims against Langston, and the claims against Greene County, must still be decided.

2. **Sexual Harassment.** The Greene County Sheriff's Office hired Gunn as a dispatcher in October 2007. Soon thereafter, Gunn dated Deputy David Hampton. During their relationship, the two exchanged nude photographs of themselves using text messages. The relationship ended around January 2008. Gunn says Deputy Hampton nonetheless continued showing her nude photos of himself while they were at work. She also says Hampton touched her inappropriately at work five or six times. And Gunn contends that after they stopped dating Hampton's demeanor towards her became more aggressive, which scared her. Then the harassment paused. Gunn hoped it had stopped. But two months into the hiatus, Hampton tried to send Gunn another racy photo of himself. She reported him.

To establish a *prima facie* case of a hostile work environment based on sexual harassment, Gunn must produce admissible evidence that: (1) she is a member of a protected group; (2) she was subjected to unwelcome sexual harassment; (3) the harassment was based on sex; and (4) the harassment affected a term, condition, or privilege of her employment. *Duncan v. General Motors Corp.*, 300 F.3d 928, 933 (8th Cir. 2002) (Title VII); *Wright v. Rolette County*, 417 F.3d 879, 884–85 (8th Cir. 2005) (§ 1983). Because Gunn is suing her employer for the actions of a co-worker, she must also create a fact question on this fifth element: Sheriff Langston knew, or should have known, about the harassment and failed to take appropriate remedial action. *Smith v. Hy-Vee, Inc.*, 622 F.3d 904, 907 (8th Cir. 2010).

Even if Gunn's sexual-harassment claim clears the fourth *prima facie* hurdle, which the Eighth Circuit has said creates a "high threshold of actionable harm," *Duncan*, 300 F.3d at 934, her claim falls on the fifth element. It is undisputed that when Sheriff Langston was told about Deputy Hampton's conduct, his office investigated the matter promptly, and then Sheriff Langston firmly and unequivocally disciplined Hampton by telling him that he could resign or be fired. Langston ordered Hampton to stay away

-3-

from Gunn.   Hampton resigned, admitting later that he had violated department policy.

This is not a case of employer neglect.   The Sheriff took prompt and proper remedial action once he learned that a deputy acted inappropriately towards a dispatcher.   Langston's correct handling of the investigation protects him from liability as Hampton's supervisor.   *Ottman v. City of Independence, Missouri,* 341 F.3d 751, 760–61 (8th Cir. 2003) (§ 1983).   On these undisputed material facts, summary judgment is warranted on sexual harassment.

**3. Gender Discrimination.**  Gunn's gender-discrimination claim fails too.   An exchange between Gunn and her lawyer on deposition shows the basis of her gender claim:

> COUNSEL: Why do you think you were discriminated on the basis of your gender?
>
> GUNN: No one else was harassed except for myself and also the situation as far as with the deputy was concerned and him being able to resign, I just felt like that all contributed to that.

*Document No. 32-2, at 39.* "I was terminated but yet he gave the [D]eputy the option to resign." *Document No. 32-2, at 19.*

-4-

Gunn argues she was treated differently, but she offers no proof. Gunn never observed Sheriff Langston discriminate against another woman. During her deposition, Gunn recited some hearsay about other alleged events. But when pressed for details she said, "I wasn't there and I'm not sure." *Document No. 32-2, at 41.* Gunn was satisfied, moreover, with Langston's discipline of Hampton.

Langston raised these performance-related problems when he fired Gunn:

- She left people on hold on the telephone too long;
- She left the dispatch area unattended;
- She came to work late twice;
- She opened a letter addressed to someone else;
- She switched shifts with another dispatcher without prior approval;
- She had problems when training another dispatcher;
- Another dispatcher had said she was uncomfortable working with Gunn; and
- Gunn had spent work time on the internet planning her wedding.

*Document No. 31, at 4; Document No. 32-2, at 10, 52–56, 72; Document No. 32-1, at 18, 20.* Langston also said Gunn had a disrespectful attitude during the final discipline meeting—so he fired her. Gunn admitted that the performance-related events occurred, though she also explained why they were neither matters of concern nor fairly raised points against her. She

denies treating Langston disrespectfully, but agrees with Defendants that it did not appear he started the meeting intending to fire her.

Because the Court is convinced that Gunn has presented no direct evidence of discrimination, she must point to admissible proof that creates a *prima facie* case on these elements: (1) she is a woman; (2) she is qualified to dispatch; (3) she suffered an adverse-employment action; and (4) similarly situated males were treated differently. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Breeding v. Arthur J. Gallagher & Co.*, 164 F.3d 1151, 1157 (8th Cir. 1999), *abrogated in part on other grounds by Torgerson v. City of Rochester*, 643 F.3d 1031, 1059 (8th Cir. 2011) (*en banc*). If Gunn can show these things, then the County must state legitimate, non-discriminatory reasons for her termination. If it does so, Gunn must show that the stated reasons are pretextual. The analysis under the ACRA is substantially similar, if not identical. *Flentje v. First National Bank of Wynne*, 340 Ark. 563, 571–73, 11 S.W.3d 531, 537–39 (2000).

Gunn has failed to create a jury question on her gender claims. The claims fall on the fourth element of her *prima facie* case: Gunn has not created a genuine issue of material fact that similarly situated males were treated

differently. In this circuit, courts can apply either a rigorous or more lenient standard at the *prima facie* stage. *Rodgers v. U.S. Bank, N.A.*, 417 F.3d 845, 850–52 (8th Cir. 2005), *abrogated in part on other grounds by Torgerson*, 643 F.3d at 1058. In keeping with the spirit of *McDonnell Douglas*'s shifting burdens, the Court applies the more lenient standard.

Gunn's gender-related claim fails nonetheless . It is based solely on the fact that Deputy Hampton was allowed to resign but she was fired. Gunn and Deputy Hampton were not "accused of the same or similar conduct [but] disciplined in different ways." *Rodgers*, 417 F.3d at 852 (internal quotation omitted). Hampton committed sexual harassment and was given the option of resigning or being fired. Almost six months later, Gunn was accused of numerous performance-related issues and a bad attitude; she was fired. The Court has considered Langston's statement during the termination about Gunn's opposition to harassment. This proof, however, touches only retaliation.

Even if a *prima facie* case exists, the Defendants prevail as a matter of law considering the record as a whole. The circumstances of Gunn's termination do not overcome her performance problems and disrespectful attitude during

-7-

the last meeting.   The distance between her misconduct and Deputy Hampton's misconduct is too far to show a pretext for gender discrimination. *Torgerson*, 643 F.3d at 1051.   All things considered, Gunn's federal gender-discrimination claim fails under *McDonnell Douglas* and related circuit precedent.   The gender claim fails under Arkansas law for the same reasons.

**4. Retaliation.** Gunn also brings retaliation claims based on § 1983, Title VII, and the ACRA.   A deposition exchange between Gunn and counsel puts these claims into context:

> COUNSEL:  [W]hy do you think that your termination . . . had anything to do with your reporting of sexual harassment against [D]eputy Hampton?
>
> GUNN:  Because the sheriff had brought it up when I was terminated.

*Document No. 32-2, at 32.*   "[H]e stated, quote, was that I had took it upon myself to notify the Arkansas state police about the sexual harassment and I got too many people involved." *Document No. 32-2, at 33.*   Langston denies making this statement.

This genuine dispute creates a jury question. Retaliation requires three things: protected activity, an adverse employment action, and causal linkage.

*Fercello v. County of Ramsey*, 612 F.3d 1069, 1077-78 (8th Cir. 2010). Langston's statement during the firing meeting, viewed in the light most favorable to Gunn, is direct evidence of retaliation. *Pye v. Nu Aire, Inc.*, 641 F.3d 1011, 1020 (8th Cir. 2011). And his statement creates a reasonable inference of pretext for retaliation about Langston's other reasons for firing Gunn. *Pye*, 641 F.3d at 1021.

Gunn's protected activity was unusual. She never reported the sexual harassment to the sheriff's office or Langston. Instead, Gunn's fiancé — an Arkansas State Trooper — reported the harassment to his supervisor. Gunn and her fiancé chose this route because "[Gunn] didn't feel like the [S]heriff, on his part, would do what was right, as far as doing something about it quickly[.]" *Document No. 32-2, at 15*. Gunn thought "the [S]heriff would be upset with me, being bad publicity for him[.]" *Document No. 32-2, at 22*. "My [fiancé] just said that he would take care of it." *Document No. 32-2, at 24*.

Gunn expected the State Police to take her complaint to Langston. It did. Her fiancé's supervisor called the Sheriff. *Document No. 23-4, at 2*. "[T]he lieutenant commander there of Troop F, called me and said, you have a

problem." *Document No. 23-3, at 3.* The resulting investigation put a stop to Hampton's inappropriate touching and the pictures.

Title VII protects persons who oppose sexual harassment or "participat[e] in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C.A. § 2000e-3 (West 2003). The ACRA provision is almost identical, but also extends liability to Langston individually. ARK. CODE ANN. § 16-123-108 (Repl. 2006); *Calaway v. Practice Management Services, Inc.,* 2010 Ark. 432, at 2. Typical protected activity includes grievances, incident reports, and charges of discrimination. *Sutherland v. Missouri Dep't of Corrections,* 580 F.3d 748, 752 (8th Cir. 2009). Any activity opposing sexual harassment is protected if the sexual harassment was unlawful, or if Gunn had "a good faith, objectively reasonable belief that the practices were unlawful." *Barker v. Missouri Dep't of Corrections,* 513 F.3d 831, 834–35 (8th Cir. 2008) (internal quotation omitted).

After considering the supplemental briefs on protected activity, the Court concludes that a question exists here for the jury. The statute speaks broadly. *Thompson v. North American Stainless, LP,* 131 S. Ct. 863, 867–69 (2011). Although the Court is uncertain if Hampton's harassment was enough

to alter a term, condition, or privilege of Gunn's employment, an issue of fact exists on whether Gunn had an objectively reasonable, good-faith belief that Hampton's harassment was unlawful. *Duncan*, 300 F.3d at 934. Complaining about harassment is "the very essence of protected activity . . . [,]" *Green v. Franklin Nat'l Bank of Minneapolis*, 459 F.3d 903, 914 (8th Cir. 2006), although Gunn chose a somewhat unusual channel. The motion for summary judgment on the retaliation claims is denied; Gunn can proceed against the County under Title VII and the ACRA for retaliation. But as Gunn acknowledged in her brief, she has no individual-capacity claim for retaliation against Langston under Title VII. *Calaway*, 2010 Ark. 432, at 1.

**5. Qualified immunity.** Gunn's ACRA retaliation claim against Sheriff Langston individually fails. Having measured Langston's alleged conduct against the controlling law, the Court grants him qualified immunity. *Smith v. Brt*, 363 Ark. 126, 130–31, 211 S.W.3d 485, 489 (2005). The law was and is murky about whether the particulars of Gunn's activity were protected. Langston could not have reasonably known that firing Gunn based in part on her complaint to the Arkansas State Police violated Gunn's civil rights.

Langston's immunity protects him against a state-law retaliation claim. *Ibid.*; *Robinson v. Langdon*, 333 Ark. 662, 667–68, 970 S.W.2d 292, 294–95 (1998).

**6. First Amendment Retaliation.** Gunn also brings federal retaliation claims based on the First Amendment through § 1983. She says her right to free speech was violated when Sheriff Langston fired her in retaliation for the complaint she made about Deputy Hampton's harassment. There is precedent about public employees' speech directly on point. *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968); *Richardson v. Sugg*, 448 F.3d 1046, 1062–63 (8th Cir. 2006).

There was no First Amendment violation. The Court agrees with the Defendants that, considering the entire record, what Gunn told the State Police (through her fiancé) about the Hampton incidents was personal to Gunn. Her speech was not on a matter of public concern — unless that category is so broad that it loses any legal meaning. If this were not so, then every public-employee Title VII discrimination case involving a report about harassment to an outside agency would also be a First Amendment retaliation case. This cannot be the law. Because Gunn did not speak on a matter of

public concern "for purposes of the *Connick* test[,]" *Sugg*, 448 F.3d at 1063, Gunn's First Amendment-related retaliation claim fails to create a triable issue.

**7. Miscellaneous.** The Court acknowledges Gunn's passing allegation that she was not fully paid for all of her work. This strikes the Court as a matter of debt. No such claim was made in the complaint.

Gunn's motion *in limine*, Document No. 26, is denied with a clarification. Gunn and Hampton's prior relationship is relevant on whether harassment actually occurred or Gunn reasonably believed it did, and thus is relevant on whether Gunn's report was protected activity. The Court has concluded, for purposes of summary judgment, that there was a reasonable belief of harassment. But this is an open question before the jury on the retaliation claim. Defendants are not offering unrelated evidence about Gunn's behavior outside the workplace or with third parties. *Compare Burns v. McGregor Electronic Industries, Inc.*, 989 F.2d 959, 961–62 (8th Cir. 1993). Instead, the Gunn/Hampton relationship is at the hub of this case. *Warren v. Prejean*, 301 F.3d 893, 906 (8th Cir. 2002).

The clarification is this:  how deeply the prior relationship is explored in the testimony, and in particular how many explicit photographs are admitted, raises the potential for unfair prejudice under Federal Rules of Evidence 403 and 412(b)(2).  The Court therefore directs the parties to confer and see if they can find common ground — perhaps a few example photographs and the total number exchanged, with similar commonsense limitations on the testimony.  If the parties cannot agree, then the Court will rule on exactly what may come before the jury by way of testimony and photographs.  This is a situation where some, but not too much, is needed for the case to be tried fairly to both sides.

\* \* \*

Defendants' motion for summary judgment, *Document No. 21*, is granted in part and denied in part.  Gunn may proceed against Greene County on her Title VII and ACRA retaliation claims.  The rest of Gunn's claims are dismissed with prejudice.  The remaining claims are reset for trial at 9:30 A.M. on 21 February 2012.

-14-

So Ordered.

_D.P.Marshall Jr._
D.P. Marshall Jr.
United States District Judge

<u>22 August 2011</u>